**ROAD SPRINKLER FITTERS LOCAL UNION NO. 669, Affiliated With the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, AFL–CIO**

v.

**NORTHSTAR FIRE PROTECTION CO.**

No. CA3–86–0665–F.

United States District Court,
N.D. Texas,
Dallas Division.

Sept. 25, 1986.

William W. Osborne, Jr., Kathleen A. Murray, Beins, Axelrod & Osborne, P.C., Washington, D.C., for plaintiffs.

Ronald M. Gaswirth, Laura M. Franze, Dan Hartsfield, Gardere & Wynne, Dallas, Tex., for defendant.

## MEMORANDUM

ROBERT W. PORTER, District Judge.

This case is before the Court on Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Having reviewed both motions,

the pleadings and evidentiary material on file, and the applicable law, the Court has determined that the Plaintiff's motion is well-taken and should be granted and that the Defendant's motion is not well-taken and should be denied.

The central issue in this decision is whether to compel the parties to arbitrate. The Plaintiff Union wants to arbitrate and the Defendant Employer does not want to arbitrate.

■ Under Rule 56, summary judgment is appropriate when there is no issue of material fact and it is clear that the movant is entitled to judgment as a matter of law. *See Joe Reguiera, Inc. v. American Distilling Co., Inc.*, 642 F.2d 826, 829 (5th Cir.1981). Some factual points have been disputed, but these are immaterial, and therefore do not bar summary judgment. *See Union Planters National Leasing, Inc. v. Woods*, 687 F.2d 117, 119 (5th Cir. 1982).

## I. RELEVANT LAW

The Supreme Court recently stated four relevant principles in *AT & T Technologies, Inc. v. Communications Workers of America*, — U.S. —, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). The first principle is that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.* at —, 106 S.Ct. at 1418. The second rule is that the question of arbitrability—whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agree to arbitrate is to be decided by the Court, not the arbitrator. *Id.* The third rule is that in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claim. *Id.* at —, 106 S.Ct. at 1418. The last rule is that where it has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of interpretation that covers the asserted dispute. *Doubts should be resolved in favor of coverage.*" *Id.* at —, 106 S.Ct. at 1419. (emphasis added).

## II. LAWFULNESS OF ARBITRATION PROVISION IN COLLECTIVE BARGAINING AGREEMENT

The Defendant argues that arbitration cannot be ordered if the contractual provision requiring arbitration is unlawful or contrary to federal labor policy. *See W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183–84, 76 L.Ed.2d 298 (1983).

■ The Union contends that the National Labor Relations Board ("NLRB") has already determined that the provision is lawful. To support this assertion, the Union offers two sets of documents. The first set of documents consists of letters from the NLRB to the Defendant. The first letter is from the Regional Director of Region 16, declining to issue a complaint in a matter wherein the Defendant had accused Plaintiff of violating Section 8 of the National Labor Relations Act, 29 U.S.C. § 158 (1973). The Regional Director explained that the Board found that the "Union's filing of [this] section 301 lawsuit against Northstar Fire Protection Co. to compel arbitration regarding its enforcement of contractual preservation clause, does not establish a violation under Section 8(e) of the Act, absent an unlawful motive." The Board had found that there was insufficient evidence to support the assertion that the Union's motive in filing the Section 301 lawsuit in U.S. District Court was its desire to represent employees of Southstar Fire Protection Co. The second letter comes from the NLRB's general counsel. This letter stated that the Board had "concluded that the burden of establishing that the work preservation clause is facially violative of Section 8(e) could not

be met, since it is clear from the language of the clause that it is not intended to apply to separate employers. Therefore, contrary to your contention on appeal, the clause would not impose the contractual terms of the agreement between Northstar and the Union to employees who are employed by separate employers." These two documents, taken together, do not show that the language in Article 3 of the Collective Bargaining Agreement between the parties is lawful, rather, they merely show that the work preservation clause is not facially violative of Section 8(e). The documents do not establish that the language in Article 3 can withstand all other attack.

The second "set" of documents that the Union has used to argue that the NLRB found Article 3 lawful is one letter, again from the NLRB Regional Office stating that the Defendant's petition for unit clarification under Section 9(c) of the NLRA had been dismissed. The Regional Director specifically states in the letter that the NLRB dismissed the petition because both parties took the position that no employees of Southstar should be included in the existing unit. This hardly amounts to a finding by the NLRB that the language in Article 3 is lawful.

■ Therefore, the Court is not persuaded by the Union's argument that the NLRB has already found the language in Article 3 to be lawful. Defendant has filed a motion to strike the Plaintiff's "supplemental brief" in which the foregoing arguments were presented. Since Plaintiff's arguments hardly swayed the Court, the motion to strike is denied. Still pending before the Court, however, is Defendant's motion for sanctions against Plaintiff for filing this supplemental brief nearly six weeks after a Court ordered deadline for such briefs.

■ On the other hand, Northstar offers *Florida Marble Polishers v. Green*, 653 F.2d 972 (5th Cir.1981) as support for its argument that the language in Article 3 is unlawful. The contract language involved in *Florida Marble* read:

The employer recognizes the Council on behalf of its affiliated Local Unions as the collective bargaining agent of all employees engaged in the work covered by this Agreement within the above territorial jurisdiction. *Id.* at 976.

The Court in *Florida Marble* said, after citing this contract language, that the contract there was illegal because the parties to the agreement had undertaken to usurp not only the non-union employees' right of self-determination under Section 7 of the NLRA, 29 U.S.C. § 157, but also the authority of the NLRB under Section 9(b), 29 U.S.C. § 159(b), to determine the appropriate bargaining unit for those employees. *Id.*

The language disputed in the instant case reads:

The National Fire Sprinkler Association, Inc., for and on behalf of its contractor members that have given written authorization and all other employing contractors becoming signatory hereto, recognize the Union as the sole and exclusive bargaining representative for all Journeymen-Sprinkler Fitters, Apprentices and Pre-apprentices in the employ of said employers, who are engaged in all work as set forth in Article 18 of this Agreement with respect to wages, hours and other conditions of employment.

After comparing the language of Article 3 with the language of the contractual provisions in *Florida Marble*, it is not altogether clear that the language in Article 3 is unlawful. Since doubts should be resolved in favor of coverage, *AT & T Technologies v. Communication Workers of America*, —— U.S. ——, ——, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986), this Court has determined to compel arbitration. Further, there is some persuasive, but not controlling authority that the Court must order arbitration if the arbitrator could read the language as lawful. *R.B. Electric v. IBEW Local 569*, 781 F.2d 1440, 1442 (9th Cir.1986).

## III. WHETHER ARTICLE 3 PRESENTS A REPRESENTATIONAL ISSUE

■ The next issue is whether Article 3 presents a representational issue, and if so,

whether this means that an arbitrator cannot arbitrate disputes concerning this language. The Defendant claims that Article 3 is representational and therefore that the arbitrator cannot arbitrate.

Hence the first question is whether Article 3 raises a representational issue. Defendant argues that under *Florida Marble,* 653 F.2d at 976, cited above, that Article 3 does raise a representational issue. The Union counters that it has specifically disclaimed any desire to represent the questioned employees of Southstar. Again, since doubts should be resolved in favor of coverage, *AT & T Technologies v. Communication Workers of America,* —— U.S. ——, ——, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1976), then the language will be treated as if it were not representational.

■ Whether the language is representational or not may turn out to make no difference, since it does not appear, contrary to Defendant's argument, that the law now requires that all disputes over representation be tried before the National Labor Relations Board.

The Defendant first cites authority that the National Labor Relations Act ("NLRA") vests exclusive authority in the NLRB to pass on representational issues. *West Point Pepperell, Inc., v. Textile Workers Union of America,* 559 F.2d 304, 307 (5th Cir.1977). That case was a declaratory judgment action and action for injunction that involved no arbitration. Further, the *West Point* Court cites *NLRB v. Cavett Carbon Co.* 360 U.S. 203, 79 S.Ct. 1015, 3 L.Ed.2d 1175 (1959) as support. This case also had no arbitration element. Both *West Point* and *Cavett Carbon* came prior to the Supreme Court's announcement of its general policy favoring arbitration. *See AT & T Technologies,* —— U.S. at ——, 106 S.Ct. at 1419. Defendant also cites *Local Union No. 59 IBEW v. Namco Elect.* 653 F.2d 143 (5th Cir.1981), wherein the Court stated that the determination of whether two firms constitute a "single employer" is reserved in the first instance for the NLRB. *Id.* at 146. That case is also not good authority for the Defendant, because again that case had no arbitration element. Defendant also cites *South Prairie Construction Co. v. Local No. 67, International Union of Operating Engineers* (Peter Kiewit), 425 U.S. 800, 96 S.Ct. 1842, 48 L.Ed.2d 382 (1976) for authority that "selection of an appropriate bargaining unit lies largely with the discretion of the Board." *Id.* at 805, 96 S.Ct. at 1844. *Peter Kiewit* is not analogous to the instant case because there the main thrust of the opinion was that the Court of Appeals should not have taken the initial determination of the issue of what the appropriate bargaining unit should be. This was because such determination was incompatible with the orderly function of the process of judicial review. *Id.*

The Court has found two cases that suggest that both the arbitrator and the NLRB may hear cases involving representation. In one case, the Court held that where both the NLRB and the arbitrator have considered the representational issue, then the NLRB need not defer to the arbitrator. *Boire v. IVT,* 479 F.2d 778, 802–03 (5th Cir.1973). Supporting authority comes from the Supreme Court which said that while the arbitrator may hear a case, the NLRB may still subsequently consider the claim. *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 50, 94 S.Ct. 1011, 1020–21, 39 L.Ed.2d 147 (1974). In both cases, an underlying assumption of the Court's decision was that an arbitrator could indeed hear representational issues.

■ Therefore, the Court has found that for the foregoing reasons arbitration should be compelled and that the arbitrator would have the jurisdiction to consider the question. However, the NLRB is not precluded from subsequently considering the questions that the arbitrator considers. Accordingly, it is hereby ORDERED that the Plaintiff's motion for summary judgment is granted and that the Defendant's motion for summary judgment is denied.